UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEREK M. LEIGH,

      Petitioner,

v.

ADAM DOUGLAS, *Warden*,

      Respondent.

Case No. 20-10545
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1, 4, 15], DENYING CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

---

In the summer of 2016, Derek Leigh and his girlfriend got into an argument. Leigh was intoxicated, and his girlfriend tried to calm him down. But things escalated. Leigh rushed toward his girlfriend, grabbed her by the neck, and pushed her into a closet door. She called out to her 14-year-old son for help, who entered the room just in time to see Leigh strangling his mother.

For this attack, Leigh was charged, and ultimately convicted following a jury trial in Michigan state court, with third-offense domestic violence, Mich. Comp. Laws § 750.81(2), and assault by strangulation, Mich. Comp. Laws § 750.84(1)(b). He was sentenced as a fourth habitual offender and is now serving a sentence of 25–45 years at Saginaw Correctional Facility in Freeland, Michigan.

Following unsuccessful attempts to overturn his conviction in the state courts, Leigh now turns to federal court, seeking a writ of habeas corpus. For the reasons set out below, Leigh's habeas petition is DENIED.

## I. Facts and Procedural History

The following facts as recited by the Michigan Court of Appeals are presumed correct on habeas review. *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)). So the Court recites them here:

> On the evening of June 27, 2016, defendant strangled his live-in girlfriend following an argument. The two had argued several times that day. Defendant drank to excess, rendering him even more combative. The victim repeatedly attempted to placate him, fearing his temper. However, when defendant accused the victim of being a bad mother to her 14–year–old son, KD, the victim reminded him of his failure to raise his own 10 children. The victim described that defendant exploded. Defendant rushed the victim and grabbed her around the neck, pushing her across the room and into her closet door. Before defendant grabbed the victim, she called for KD. KD entered the room in time to see defendant strangling his mother against the closet and he heard her cough. Defendant then released his grip.
>
> The victim fled the home with KD and his friend, AD. Defendant also left and went to a neighbor's house. Upon noticing defendant's exit, the victim, KD, and AD returned and locked themselves in the house. The victim contacted the police when the indignant defendant arrived with the neighbor and demanded to remove his property from the home.
>
> At trial, the prosecution presented evidence that defendant had strangled a former girlfriend in much the same manner as here. In January 2015, defendant and his live-in girlfriend, Melissa Wencley, argued about whether Wencley should take their one-year-old daughter out to dinner with her on a cold winter evening. Wencley indicated that she would be taking the baby because she would not leave the child "with a crack head." Defendant responded by grabbing Wencley by the neck, pushing her from the nursery and into the master bedroom, and holding her down on the bed while strangling her.

*People v. Leigh*, No. 335883, 2018 WL 2223334, at *1 (Mich. Ct. App. May 15, 2018) (per curiam), *aff'd*, 920 N.W.2d 594 (Mich. 2018) (mem.).

A jury convicted Leigh of domestic violence and assault by strangulation. Leigh's conviction was affirmed on appeal. *See id.*

Leigh filed a motion to correct the sentence (ECF No. 6-12), which the trial court construed as a Rule 6.500 motion for relief from judgment and denied, *People v. Leigh*, No. 16-001697 (Mich. Cir. Ct. Apr. 12, 2019) (citing Mich. Ct. R. 6.500), *available on this docket at* (ECF No. 6-13). The Michigan Court of Appeals and the Michigan Supreme Court both denied leave to appeal. *People v. Leigh*, No. 349004 (Mich. Ct. App. Aug. 30, 2019) (mem.), *available on this docket at* (ECF No. 6-16, PageID.1065); *People v. Leigh*, 937 N.W.2d 677, 678 (Mich. 2020), *available on this docket at* (ECF No. 6-17, PageID.1167). But the Michigan Supreme Court also clarified that Leigh had not filed a Rule 6.500 motion for relief from judgment. *Leigh*, 937 N.W.2d at 678 ("[A]lthough the defendant's motion has been styled as a motion for relief from judgment by the courts below, it should not be regarded as a motion for relief from judgment in any future case.").

Leigh filed a habeas petition on February 28, 2020 (ECF No. 1) and filed an amended petition on July 20, 2020 (ECF No. 4). Leigh later moved to stay proceedings and hold the petition in abeyance so that he could return to the state courts to exhaust additional claims. (ECF No. 9.) The Court granted the motion (ECF No. 10) and the case was administratively closed. (*Id.*)

In Michigan state court, Leigh then filed a post-conviction motion for relief from judgment pursuant to Michigan Court Rule 6.500. It was denied, *People v. Leigh*, No. 16-001697 (Mich. Cir. Ct. July 22, 2021), as was leave to appeal, *People v. Leigh*, No. 358901 (Mich. Ct. App. Mar. 24, 2022), *appeal denied*, 977 N.W.2d 550 (Mich. 2022) (mem.).

Most recently, Leigh filed a motion to reopen the case as well as another amended habeas petition. (ECF Nos. 14–15.) The Court granted that motion and accepted Leigh's second amended petition. (ECF No. 16.) In doing so, the Court stated that it would treat Leigh's proposed amended petition (ECF No. 15) as a supplement to his original petitions (ECF Nos. 1, 4). Thus, Leigh's petition for habeas corpus now consists of all materials from those three filings. (*See* ECF Nos. 1, 4, 15.)

Combined, Leigh seeks habeas relief on the following claims: (1) he was denied his right to confront the witnesses against him and to present a defense when he was not permitted to impeach a witness; (2) the trial court erred in allowing the introduction of prejudicial "other acts" evidence and counsel was ineffective for failing to object to the admission of this evidence; (3) his due process rights were violated by being visibly shackled during trial and counsel was ineffective for failing to object; (4) the sentencing guidelines were incorrectly scored, the presentence investigation report contained inaccurate information, and trial counsel was ineffective for failing to object; (5) trial counsel was ineffective for failing to challenge the underrepresentation and systematic exclusion of African Americans on the jury venire; (6) the trial court erred in refusing the jury's request to have the trial transcripts read back to them; (7) his sentence violates the Double Jeopardy Clause and was impermissibly enhanced to punish him for exercising his right to a trial; (8) the evidence was insufficient to convict Leigh of domestic violence and assault with intent to do great bodily harm less than murder and trial counsel was ineffective for failing to move for a directed verdict; and (9) he is entitled to relief based on the

cumulative effect of the trial errors and/or the cumulative effect of prejudice from the deficient performance of trial and appellate counsel.

The Court denies Leigh's first through fourth claims on the merits and denies his fifth through ninth claims as procedurally defaulted.

## II. Claims Adjudicated on the Merits (Claims 1–4)

### A. Standard

As a preliminary matter, the Warden argues that Leigh's second and third claims are procedurally defaulted because Leigh's attorney failed to object at trial. (ECF No. 19, PageID.1748, 1766.) For his part, Leigh claims that his trial counsel was ineffective for failing to object. (ECF No. 1, PageID.11, 18.)

Ineffective assistance of counsel may establish good cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000). And this Court has the discretion to deny a habeas claim on the merits even if the claim may be procedurally defaulted. *See Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). In this case, judicial economy favors resolving claims two and three on the merits rather than delving into complicated questions of procedural default. *See, e.g.*, *Helms v. Bowerman*, 785 F. App'x 274, 279 (6th Cir. 2019) (proceeding to the merits of a habeas claim because the procedural-default issue was "complicated and unnecessary to the disposition of th[e] case").

When considering habeas claims on the merits that have been addressed by the state court, federal courts must afford state court decisions on those issues

considerable weight. The Antiterrorism and Effective Death Penalty Act ("AEDPA") "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). So to obtain relief in federal court, habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' [must] show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101. And a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), with review being "limited to the record that was before the state court," *Cullen*, 563 U.S. at 181. But if a state court does not adjudicate a claim "on the merits," "AEDPA deference does not apply and [this Court] will review the claim de novo." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014) (internal quotations omitted).

Here, the state courts clearly adjudicated Leigh's first through fourth claims "on the merits" as that phrase is used in § 2245(d).

Leigh raised his first three claims on direct appeal. The Michigan Court of Appeals reviewed Leigh's second and third claims for plain error, *see Leigh*, 2018 WL 2223334, at *2–4, which qualifies as an "on the merits" determination, *see Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).

Leigh raised his fourth claim for the first time in his post-conviction motion to correct his sentence. As explained, the state trial court initially interpreted this motion as a motion for relief from judgment and denied it, finding that Leigh "has the burden of showing that relief would be proper" and that "[t]he Court may not grant relief when a defendant alleges grounds for relief that could have been raised on appeal from the conviction and sentence or in a prior motion." *People v. Leigh*, No. 16–001697 (Mich. Cir. Ct. Apr. 12, 2019). The Michigan Supreme Court denied leave to appeal but nonetheless commented on the merits: the Court clarified that Leigh had not filed a motion for relief from judgment but upheld the Court of Appeals' decision to deny leave to appeal "due to a lack of merit on the grounds presented." *Leigh*, 937 N.W.2d at 678.

So because the state courts adjudicated Leigh's first four claims on the merits, AEDPA deference applies. The Court cannot grant habeas relief on those claims unless the state court issued a decision in Leigh's case that was either contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.

With that in mind, the Court will address the merits of Leigh's first four claims.

## B. First Claim

Leigh's first claim raises two separate but related arguments. Specifically, Leigh argues that (1) his right to confront the victim and (2) his right to present a defense were violated when his attorney was not allowed to ask the victim about whether she had picked up Leigh's Xanax prescription from the pharmacy four days after he was arrested. (ECF No. 1 PageID.3.)

According to Leigh, he and the victim fought because the victim was upset that Leigh did not go to the pharmacy earlier that day to pick up his Xanax prescription. Thus, Leigh argues, evidence that the victim went to pick up the Xanax after he was arrested is relevant because it rebuts the victim's claim that the fight started over a comment about Leigh's parenting skills. (*Id.*) The way Leigh sees it, this evidence demonstrates the victim's motive to "exaggerate[] the incident enough for [Leigh] to get arrested and taken to jail, which would make [the victim] free to pick up the [prescription Xanax] and use [it] for herself." (*Id.*)

This argument fails to persuade on all levels.

### 1. Confrontation Clause Argument

"The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him." *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (internal quotation omitted). "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Id.* (cleaned up). That said, "trial judges retain

wide latitude" "to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.*

Here, there is nothing in the Court of Appeals' analysis that was either contrary to, or involved an unreasonable application of, clearly established federal law. The Michigan Court of Appeals found that the state trial court did not abuse its discretion when it excluded evidence regarding the victim's actions four days *after* the offense because the trial court determined it was not relevant to the victim's state of mind *at the time of* the offense. *See Leigh*, 2018 WL 2223334 at *2. The Michigan Court of Appeals concluded that the trial court properly excluded the evidence pursuant to Michigan Rule of Evidence 403 as being more prejudicial and misleading than probative. *Id.* Indeed, using its "wide latitude" to "impose reasonable limits" on cross-examination, the trial court noted that it would—and did—allow Leigh to question the victim about the subject of their argument that night. (ECF No. 6-5, PageID.406); *Van Arsdall*, 475 U.S. at 678. But the trial court determined that asking about the victim's whereabouts four days after the incident went a step too far. The Court of Appeals noted this determination was reasonable especially because, "[t]he evidence was overly prejudicial as it painted the victim in a criminal light when no charges were ever pressed against her and [Leigh] had actually previously given her permission to pick up his prescriptions." *Leigh*, 2018 WL 2223334 at *2.

And, in any event, alleged violations of the Confrontation Clause are subject to harmless-error review. That means that when a state court determines, as the Michigan Court of Appeals did here, that a constitutional error at trial is harmless, Leigh is only entitled to relief on his claim if he can satisfy two separate tests: (1) the test outlined in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and (2) the deferential review required by AEDPA. *Heinery v. Washington*, No. 23-1772, 2024 WL 759055 at * 3 (6th Cir Feb. 9, 2024); *Brown v. Davenport*, 596 U.S. 118, 122 (2022). "In short, a federal court must *deny* relief to a state habeas petitioner who fails to satisfy either *Brecht* or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests." *Id.* (cleaned up). !

*Brecht* requires a state prisoner seeking to challenge his conviction in habeas proceedings to show that the error had a "substantial and injurious effect or influence" on the outcome of his trial. 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). A "substantial or injurious effect or influence" means "actual prejudice." *See id*. Meanwhile, "AEDPA asks whether *every* fairminded jurist would agree that an error was prejudicial." *Brown*, 596 U.S. 118 at 136.

Leigh fails both tests. Leigh has not shown that any error in limiting the cross-examination had a substantial and injurious influence on the outcome of his case. As explained by the Michigan Court of Appeals, the victim's son heard the argument and confirmed that it was about Leigh's parenting skills. More importantly, the victim's son witnessed Leigh assault and choke his mother. Considering this corroborating evidence, the Michigan Court of Appeals reasonably concluded that the exclusion of

evidence that the victim obtained Leigh's Xanax following his arrest was harmless. Nor can this Court say that "*every* fairminded jurist would agree that an error was prejudicial." *Brown*, 596 U.S. 118 at 136. Thus, Leigh is not entitled to relief on his Confrontation Clause claim.

## 2. Complete-Defense Argument

Leigh also argues that the trial court's restriction on cross examination abridged his constitutional right to present a complete defense. However, the showing that Leigh would have to make to succeed on a complete-defense claim is similar to what he must make to succeed on a Confrontation Clause claim.

Just as Leigh has the right to confront the prosecution's witnesses, he also has the right to question those witnesses to further develop their testimony and establish a defense. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986). But this is not an unlimited right. While "[t]he Constitution guarantees a meaningful opportunity to present a complete defense," it does not guarantee the "right to ride roughshod over reasonable evidentiary restrictions. A defendant must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Wynne v. Renico*, 606 F.3d 867, 870 (6th Cir. 2010) (cleaned up). Indeed, the right to present a complete defense does not mean that a defendant gets a free pass to "introduce whatever evidence he wishes." *United States v. Scheffer,* 523 U.S. 303, 308 (1998) (quotation marks omitted).

11

For the same reasons discussed above, the Court finds that the state courts' exclusion of testimony regarding Leigh's Xanax prescription pursuant to the Michigan Rules of Evidence was not contrary to clearly established federal law. Thus, the Court denies Leigh's first claim.

### C. Second Claim

Leigh's second claim is that evidence of his prior assault on his ex-girlfriend, Melissa Wencley, should have been excluded under MRE 403 and that the admission of this evidence "denied [him] a fair trial." (ECF No. 1, PageID.11–17.) Leigh also argues that his trial counsel was ineffective for failing to object to the introduction of this evidence. (*Id.*) As a reminder, Wencley testified at trial about how in 2015—a year before the assault here—Leigh had assaulted and strangled her following an argument about Leigh's parenting skills.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Rather, a federal court is limited to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law regarding the admissibility of evidence are usually not questioned by a federal habeas court "unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004); *Seymour v. Walker*, 224 F. 3d 542, 552 (6th Cir. 2000).

12

Here, the admission of another act of domestic violence committed by Leigh under Michigan Compiled Law § 768.27b that was factually analogous to the incident at issue was not so fundamentally unfair that it rises to the level of a federal due process violation. As the Michigan Court of Appeals discussed, MCL § 768.27b(1) allows the prosecution to admit evidence of past acts of domestic violence in a domestic violence trial "for any purpose for which is relevant" so long as it is not "otherwise excluded under [MRE] 403." On appeal in state court, Leigh's appellate counsel argued that testimony regarding Leigh's past assault was unfairly prejudicial because the past assault was too "dissimilar" to the assault in this case. (*See* ECF No. 6-14, PageID.949.) The Michigan Court of Appeals disagreed.  Instead, it reasonably found that admitting Leigh's prior assault was not unfairly prejudicial in part because it was so "remarkably similar" to the assault here. *Leigh*, 2018 WL 2223334 at *4 ("Both assaults occurred during arguments over parenting abilities. During both arguments, defendant became enraged and grabbed his partner by the neck."). It also reasoned that the evidence of Wencley's assault was reliable; she immediately reported the assault to the police, who came to the home and observed red marks on her neck. *Id.* Thus, because the state courts' application of state law was not so "fundamentally unfair as to deprive the petitioner of due process," Leigh has no cognizable claim. *McAdoo*, 365 F.3d at 494.

This dooms Leigh's argument that his counsel was ineffective for failing to object to the admission of testimony regarding Leigh's history of domestic violence. *See, e.g.*, *Williams v. Horton,* No. 21-1192, 2021 U.S. App. LEXIS 30256, at *12 (6th

Cir. Oct. 7, 2021) (affirming that trial counsel was not ineffective for failing to object to admissible evidence). An ineffective assistance of counsel claim has two components. A petitioner must show (1) that counsel's performance was deficient, and (2) that the deficiency resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is judged under a "highly deferential" reasonableness standard. *Id.* at 688–89. And prejudice occurs only when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687. Simply put, the *Strickland* standard is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013)).

And when a state court addresses an ineffective assistance of counsel claim on the merits, obtaining relief is even more difficult because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (citations and quotation marks omitted). This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). Thus, "the question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

Here, the Michigan Court of Appeals addressed Leigh's ineffective assistance claim on the merits. It found that, because the evidence was admissible under Michigan law, "defense counsel had no grounds to object." *Leigh*, 2018 WL 2223334 at *5. And, in any event, defense counsel "tried to spin this evidence to defendant's advantage" by eliciting testimony that the victim reached out to Wencley on Facebook after the attack. *Id.* Using this, defense counsel "attempted to establish some level of collaboration between Wencley and the current victim to undercut the current victim's credibility." *Id.* Relying on Michigan law, the Michigan Court of Appeals found that counsel's failure to make a futile objection and choice to pursue a trial strategy that was ultimately unsuccessful did not render him ineffective. *Id.*

"[W]hen assessing a habeas petition," federal courts "'must defer to a state court's interpretation of its own rules of evidence and procedure.'" *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). The Michigan Court of Appeals determined that evidence of Leigh's prior assault of Wencley was admissible under Michigan law. This Court must defer to that determination. *See Brooks v. Anderson*, 292 F. App'x 431, 437–38 (6th Cir. 2008)*; see also Adams v. Smith*, 280 F.Supp.2d 704, 721 (E.D. Mich. 2003) (rejecting claim of ineffective assistance of counsel for the failure to object to hearsay based on state court's determination under state law that testimony at issue was not hearsay). Because this Court "cannot logically grant the writ based on ineffective assistance of counsel without determining that the state court erred in its interpretation of its own

law," the Court must reject Leigh's ineffective assistance of trial counsel claim. *See Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005).

Thus, the Court denies Leigh's second claim.

### D. Third Claim

Leigh's third claim is that he was denied due process when he was forced to wear a leg brace restraint under his clothes throughout trial, which he alleges the jurors could see. (ECF No. 1, PageID.18.) Leigh further argues that trial counsel was ineffective for failing to object. (*Id.*)

Leigh raised this claim on direct appeal and the Michigan Court of Appeals rejected it. *Leigh*, 2018 WL 2223334 at *2–3. It reasoned that the presumption of innocence is not infringed unless the jury "actually observe[s] that the defendant was shackled." *Id.* at *2. And even when the jury "inadvertently see[s] a defendant in shackles, there still must be some showing that the defendant was prejudiced to merit relief." *Id.* (internal quotation omitted). Ultimately, the Michigan Court of Appeals found that Leigh never claimed that the jury actually saw the leg brace beneath his clothing. Rather, Leigh asserted that the leg brace interfered with his ability to walk such that a jury might "speculate that he was a danger." *Id.*

The Court finds that the Michigan Court of Appeals' decision on Leigh's shackling claim was not contrary to, nor involved an unreasonable application of, clearly established federal law. To be sure, the Supreme Court has held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury" absent a special state interest. *Deck v. Missouri*, 544 U.S. 622, 629 (2005).

*Deck*, however, "concerned only visible restraints at trial." *Mendoza v. Berghuis*, 544 F.3d 650, 654 (6th Cir. 2008).

Here, the Michigan Court of Appeals found that Leigh failed to establish his leg restraints were visible to the jurors during trial. In considering federal habeas petitions, a federal district court must presume the correctness of state court factual determinations; a habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Bailey v. Mitchell*, 271 F. 3d 652, 656 (6th Cir. 2001); 28 U.S.C. § 2254(e)(1). This presumption of correctness extends to factual findings made by a state appellate court based on their review of trial court records. *See Sumner v. Mata*, 449 U.S. 539, 545–46 (1981). Leigh presents no evidence to rebut the Michigan Court of Appeals factual determination. (*See* ECF No. 1, PageID.18.) Thus, the Court will reject his due process claim.

For the same reasons, the Court rejects Leigh's related ineffective assistance of counsel claim. Again, counsel is not deficient for failing to object to a non-issue. *See Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020) (noting that trial counsel is not ineffective for failing to raise a meritless objection). And Leigh advances no argument that but for his counsel's failure to object, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, counsel was not ineffective in failing to object to the use of a leg brace. *See Taylor v. McKee*, 649 F.3d 446, 451, n. 1 (6th Cir. 2011); *Strickland*, 466 U.S. at 687.

Thus, the Court denies Leigh's third claim.

17

### E. Fourth Claim

Leigh's fourth claim challenges the scoring of his sentencing guidelines as well as the information in his presentencing report. (ECF No. 6-13 Page ID.884.) He also claims trial counsel was ineffective for failing to object. (*Id.*)

A claim that the state trial court incorrectly scored or calculated Leigh's sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 F. App'x 52, 53 (6th Cir. 2003). Errors in the application of state sentencing guidelines cannot independently support habeas relief. *See Kissner v. Palmer*, 826 F. 3d 898, 904 (6th Cir. 2016). Thus, the Court cannot grant Leigh relief on his challenge to the scoring of his sentence.

Similarly, Leigh's claim that the trial court failed to correct inaccuracies in his pre-sentence report fails. It is true that a criminal defendant has a constitutional right not to be sentenced based on "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980) (quoting *United States v. Tucker,* 404 U.S. 443, 447 (1972)). "To demonstrate that the use of misinformation violated due process the defendant must show that the evidence was materially false and that the trial judge relied upon it." *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *see Koras v. Robinson*, 123 F. App'x. 207, 213 (6th Cir. 2005).

But Leigh has not made such a showing. Indeed, it is entirely unclear what inaccuracies Leigh is objecting to. In his petition (ECF No. 1.), Leigh refers this Court to Exhibit H, a transcript of his trial counsel's closing argument, and seems to be

relitigating whether he strangled the victim in this case. But "it is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey,* 125 F.3d 989, 995–96 (6th Cir. 1997) (citations omitted). And the "court is under no obligation to scour the record for errors not identified by [the petitioner]." *Bush v. Astrue,* No. 12–11790, 2013 WL 1747807, at *14 (E.D. Mich. Jan 25, 2013) (quoting *Martinez v. Comm'r of Soc. Sec.,* No. 09–13700 (E.D. Mich. Mar.2, 2011)). Accordingly, the Court denies Leigh relief on his challenge to his presentence report.

Finally, regarding Leigh's related ineffective assistance of counsel claim, Leigh is unable to show that he was prejudiced by his counsel's failure to challenge the scoring of his sentencing guidelines. Here, the state courts concluded that there was a factual basis for the scoring of Leigh's sentence under Michigan law. Thus, Leigh's argument that an objection to the scoring would have been successful is pure speculation. And when "one is left with pure speculation on whether the outcome of" sentencing "could have been any different," there has been an insufficient showing of prejudice. *Baze v. Parker*, 371 F. 3d 310, 322 (6th Cir. 2004). In his petition, Leigh offers no evidence to show that an objection by counsel would have changed the state courts' determination.

Thus, the Court denies Leigh's fourth claim.

### III. Procedurally Defaulted Claims (Claims 5–9)

The Warden asserts that claims five through nine are procedurally defaulted. The Court agrees.

19

"When a state prisoner procedurally defaults a claim for habeas relief," "[this Court] defer[s] to the state's procedural ruling and refuse[s] to consider the claim on the merits." *Peoples v. Lafler*, 734 F.3d 503, 510 (6th Cir. 2013) (citing *Wainwright v. Sykes*, 433 U.S. 72, 86–87 (1977)). Procedural default results where four elements are satisfied: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default. *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010). "[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263–64 (1989).

The Michigan Supreme Court rejected Leigh's post-conviction appeal on the ground that "[Leigh] has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Leigh*, 977 N.W.2d at 550. The Michigan Court of Appeals denied Leigh's post-conviction appeal in a form order "because [Leigh] has failed to establish that the trial court erred in denying the motion for relief from judgment." *People v. Leigh*, No. 358901 (Mich. Ct. App. Mar. 24, 2022), *available at* (ECF No. 20-10, PageID.2585). These orders, however, did not specifically refer to subsection (D)(3) nor did they mention Leigh's failure to raise his claims on his direct appeal as their rationale for rejecting his post-conviction appeals. Because the form orders in this case are ambiguous as to whether they refer to procedural default or a

20

denial of post-conviction relief on the merits, this Court must "look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Leigh's claims. *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010); *Ylst v. Nunnemaker,* 501 U.S. 797, 803–05 (1991).

Here, the state trial court rendered the last reasoned opinion. In dismissing Leigh's claims, the St. Clair County Circuit Court reasoned that "[a]ll of these alleged errors would have occurred during trial and could have been raised on direct appeal." *People v. Leigh,* No. 16–001697 at * 2 (Mich. Cir. Ct. July 22, 2021), *available at* (ECF No. 18-3, PageID.1648). Likewise, it relied on the "cause and prejudice" standard found in MCR 6.508(D)(3). *Id.* The court concluded that Leigh was not entitled to relief on his post-conviction claims because he failed to show good cause for not raising these claims on his direct appeal. *Id.* at *8. This finding is sufficient to invoke the procedural bar of MCR 6.508(D)(3). *See Friday v. Pitcher*, 99 F. App'x 568, 574 (6th Cir. 2004); *see Guilmette*, 624 F.3d at 291 (describing MCR 6.508(D)(3) as the "procedural default rule").

The fact that the trial court also discussed the merits of Leigh's claims is immaterial; a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits and conducting plain-error review. *Fleming v. Metrish*, 556 F.3d 520, 539 (6th Cir. 2009).

So because the state courts relied on a state procedural bar in dismissing Leigh's fifth through ninth claims, Leigh can avoid procedural default only if he can show that "there was cause for the default and prejudice resulting from the default,

21

or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case." *See Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

Leigh alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. But Leigh has not shown that appellate counsel was ineffective. It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

Leigh has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that Leigh raised for the first time in his post-conviction motion for relief from judgment. As the St. Clair County Circuit Court detailed, these defaulted claims did not have any merit. Appellate counsel filed a forty-one-page appellate brief which raised the first three claims that Leigh raises in his original petition. (*See* ECF No. 6-14, PageID.912–959.) And Leigh has not shown that appellate counsel's strategy in presenting these claims and not raising other claims was deficient.

Finally, the miscarriage-of-justice exception requires a showing that a constitutional violation probably resulted in the conviction of a person who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). "'[A]ctual innocence' means

factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). Leigh has made no such showing.

Thus, the Court denies Leigh's fifth through ninth claims.

## IV.

For these reasons, Leigh's petition for a writ of habeas corpus is DENIED, a certificate of appealability is DENIED, and any request to proceed in forma pauperis on appeal is GRANTED. A separate judgment will follow.

SO ORDERED.

Dated: September 26, 2024

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE